Mr. Justice CATRON
 

 delivered the opinion of the court.
 

 In December, 1854, Shepherd and others recovered a judgment against the Covington Drawbridge Company, for upwards of six thousand dollars.' At the same time, Davidson recovered a judgment against the same company for upwards of a thousand dollar’s.
 

 The corporation was created by an act of the Legislature of Indiana, and built a drawbridge over the "Wabash river, in that State, pursuant to its charter; was sued for a
 
 tort
 
 iii the Circuit Court of the United States for Indiana district, where the recoveries were had. Executions at law were regularly issued, and at March term, 1855, of that court, were returned by the marshal, “nothing found.” Alias writs of
 
 ji. fa.,
 
 were taken out and levied on the bridge as real estate, and in November, 1855, the marshal proceeded to sell the rents and profits of the same on Davidson’s judgment for the term of one year, at the. sum of $4,666.62, Davidson, the execution creditor, becoming the purchaser. The agent of Shepherd and others instructed the marshal not to sell the bridge on their judgment, and he returned the special facts. Davidson demanded possession of the bridge from the corporation, so that he might obtain the tolls, but the keeper of the bridge, and a principal owner of the stock, refused to surrender possession. In May, 1856, Shepherd, and those interested in the large judgment jointly with Davidson, filed their bill in equity in the Circuit Court of the United States for the district of Indiana, against the bridge company, and Richard M. Nebeker^ as keeper, agent, and manager, of the bridge; praying that the court should appoint a-suitable receiver'to take possession of the same, and .receive .the'tolls and income, and apply them to discharge the judgments at law, after defraying expenses. The court made the decree prayed for, from wdiieh the bridge company appealed to this court.
 

 The first objection made to the decree is, that it does not appear by the bill that the defendant is properly described as
 
 *123
 
 incorporated by tbe State of Indiana. The bill alleges that “The Covington Drawbridge Company, of Covington, is a corporation and citizen of the State of Indiana; ” and it is also insisted, that the judgments at law are void, because jurisdiction was not given to‘the United States courts by the averment of citizenship in either of the declarations. The judgment at law, in Shepherd’s case, was brought before this court at the last term, when it was held that the averment of citizenship here objected to was sufficient. (20 Howard, 227.) That decision is conclusive of the two foregoing exceptions.
 

 The consideration whether by a creditor’s bill corporate property and franchises can be subjected to pay the debts of the corporation, by taking possession and administering its affairs,' and drawing to the court its revenues, is a question of great importance and some difficulty. In advance of this question, it is insisted here that there exists in Indiana an adequate remedy at law; that Davidson’s judgment is satisfied by the levy and sale of the tolls of the bridge; and Davidson having obtained a remedy
 
 by fi. fa.,
 
 Shepherd may do the same. To ascertain whether Davidson obtained satisfaction by the marshal’-s salé, we must inquire what, property was sold, and what title to it acquired, that could be made available by possession and the receipts of tolls.
 

 The Covington Drawbridge Company was duly incorporated to build a bridge across the Wabash river where it was navigable for steamboats, and not subject to be bridged by an individual assuming to exercise a mere private right. The corporation had conferred on it a public right of partially obstructing the river, Much is a common highway, and which obstruction would have been a nuisance, if done without public authority. This special privilege, conferred on the corporation by the sovereign power, of obstructing the navigation, did not belong to the country generally by common right, and is therefore a franchise; and, secondly, the authority of taking toils from those who crossed the river on the bridge was also a franchise, and freedom to do that which could not be lawfully done by one without public authority; this franchise could only be conferred by the Legislature.directly, or indirectly
 
 *124
 
 through public agents and tribunals, in pursuance of a statute. The- bridge is part of a road, and an easement, like the road; and the privilege of making the bridge, and taking tolls for the use of the same, is a franchise in which the public have an interest; the corporation, as owner of the franchise, is liable to answer in damages if it refuses to transport individuals on being paid or tendered the usual fare; the law secured the tolls as a recompense for the duty imposed to provide and maintain facilities for accommodating the public. "Whether the timbers and materials of this bridge could be sold at auction by the marshal, by virtue of a
 
 fieri facias
 
 in his hands, as was held could be done by the laws of North Carolina in the case of the State
 
 v.
 
 Rives, 5 N. C. R., 297, we are not called on to decide in this case, as here the annual tolls were sold, and not the bridge itself.
 

 By the laws of Indiana, lands and tenements cannot be sold under execution, until the rents and profits thereof for a term not exceeding seven years shall have been first offered for sale at public auction; and if that term, or a less one, will not satisfy the execution, then the debtor’s interest or estate in the land may be sold, provided it brings two-thirds of its appraised value. The tolls, under the idea that they were rents and profits of the bridge, were sold for one year, according to the forms of this law. The tolls of the bridge being a franchise, and sole right in the corporation, and the bridge a mere easement, the corporation not owning the fee in the land at either bank of the river, or under the water, it is difficult to say how an execution could attach to either the franchise or the structure of the bridge as real- or personal property. This is a question that this court may well leave to the tribunals of Indiana to decide on their own laws, should it become necessary. One thing, however, is plainly manifest, that the remedy at law of these execution creditors is exceedingly embarrassed, and we do not see how they can obtain satisfac-. tion of their judgments from this corporation, (owning no corporate property but this bridge,) unless equity can afford relief.-
 

 By the laws of Indiana, stocks in a corporation may be sold
 
 *125
 
 by virtue of an execution against tbe owner of tbe stocks, which the sheriff may transfer to the purchaser; but this law does not help these complainants; they did not proceed against the stocks; their judgment at law did not affect individual property, but corporate property. The question whether a railroad company’s property, including.the franchises, can be-subjected to the debts of the corporation by a decree in equity, is treated very fully by Redfield on Railways, ch. 32, section 2, p. 571; there the substance of the decisions affecting the doctrine is given in cases where there were liens by mortgage. The subject was well examined by the Supreme Court of Georgia in the case of the Macon and Western Railroad Company
 
 v.
 
 Parker, 9 Geo. R., 378. The contest there involved claims of creditors. When speaking of the necessity of equity exercising jurisdiction, the court say “ that the whole history of equity jurisprudence does not present a case which 'made the interposition of its powers not only highly expedient, hut so indispensably necessary in adjusting the rights of creditors to an insolvent estate as this did.” The'road was sold according’ to the decree; but, to settle the difficulty as to the sale of a franchise without the consent of the power granting it, upon application, an act was passed by the Legislature, creating the purchaser and his associates a body corporate, with the powers and privileges of the old company. In England, the practice is, to order a receiver to be appointed to manage.the corporate property, take the proceeds of the franchises, and apply them to pay the creditors filing the bill.
 

 Blanchard v. Cawthorn, 4 Simons’s R., 566.
 

 Tripp
 
 v.
 
 The Chard Railway Company, 21 E. Law and E. R., 53.
 

 All that we are called on to decide in this ease is, that the court below had power to cause possession to be taken of the bxñdge; to appoint a receiver to collect tolls, and pay them into coux’t, to the-end of discharging the judgments at law; and our opinion is, that the power to do so exists, and that it was properly exercised. It is therefore ordered that the decree below be affirmed, and the Circuit Court is directed to proceed to execute its decree:
 

 
 *126
 
 Mr. Justice DANIEL dissented, for want of jurisdiction of the courts of the United States over corporations.
 

 Marshall
 
 v.
 
 Balt. and Ohio R. R. Co., 16 How. Reports.