Wood *et al. v.* Truckee Turnpike Co.

# D. J. WOOD, AND S. D. WOOD *v.* THE TRUCKEE TURNPIKE COMPANY.

SHERIFF'S SALE OF CORPORATE FRANCHISES.—The franchises of a corporation organized for the construction of a plank or turnpike road, do not pass by a Sheriff's deed, where the Sheriff, by virtue of an execution issued on a judgment against the corporation, levies upon all the right, title, interest, claim, and property of the corporation in their *road*, advertises and sells the same, in the manner in which real estate is advertised and sold and executes to the purchaser a deed therefor.

FRANCHISES OF CORPORATION—SALE OF.—The franchises of a corporation are privileges granted and held in personal trust, and cannot be transferred by forced sale, or by voluntary assignment, except by permission of the Government, and when that permission is granted, the mode of transfer pointed out must be followed.

EJECTMENT.—Ejectment does not lie to try the right to a road or right of way.

SAME.—A road or right of way is an incorporeal hereditament, and ejectment is maintainable only for corporeal hereditaments.

CORPORATION—RIGHT TO HOLD LAND.—Corporations organized for the construction of plank or turnpike roads cannot acquire or hold lands, or the possessory right thereto, or any interest therein, beyond the easement or right of way over the same.

TITLE TO LAND WHERE ROAD PASSES.—The road of a turnpike company is not the private property of the company, but belongs to the public, and all the interest the company has in it is the right and power to collect tolls on the line of the road as a compensation for building it.

RIGHTS OF TRAVELLERS ON TOLL ROAD.—Every traveller has the same right to use the road of a turnpike company upon paying the toll established by law that he has to use any other public highway.

SHERIFF'S SALE OF ROAD.—The levy upon and sale of a road, by virtue of an execution, gives to the purchaser no right or title to the same, for, being the property of the public, the defendant in the execution has no interest therein which can be conveyed by the officer.

APPEAL from the Seventeenth Judicial District, Sierra County.

The Truckee Turnpike Company was a corporation organized for the construction of a turnpike road.

The company constructed a turnpike road, leading from the southern line of Sierra County, running thence in a northeasterly direction through said county, by way of Plum Valley, Fred's Ranch, Cornish Ranch, and Jackson's Ranch, to the northeastern boundary line of the county.

The road was built upon public lands.

Wood *et al. v.* Truckee Turnpike Co.

The execution upon which the road was sold was in the usual form, and the Sheriff levied and sold in the manner required by statute for levying upon and selling real estate. At the end of six months the Sheriff executed to the purchaser a deed.

The other facts are stated in the opinion of the Court.

*Charles E. Filkins,* for Appellant.

The main and about the only material proposition in this case is, can property or rights like this be sold under execution, as this was sold? The statute of this State, the law and decisions of other States, and the policy of the Government, are against such a conclusion.

To commence with our own statute (Wood's Dig. p. 117, from section 20 to section 28 inclusive): The manner and form in which such rights and interests may be sold under execution is clearly defined; for it will not be disputed that the power that created the franchise had the right to provide and say the manner in which it could be held or disposed of.

The officer having an execution against " any turnpike or other corporation authorized to receive toll," shall give notice for thirty days, (and in this case twenty days notice was given,) and at the sale the person who will satisfy the execution, etc., and agree to take such franchise for the shortest period of time and receive the tolls, " shall be considered the highest bidder," and the officer making such sale shall transfer to the purchaser all privileges and immunities belonging to the corporation, and shall, immediately after the sale, deliver to the purchaser possession of all the toll houses, etc., and the purchasers may demand and receive tolls, etc., in the same manner as the corporation could before such sale, and may recover penalties imposed by law for any injury to the franchise; and by section twenty-six the corporation is bound to repair and keep the road in order, and are liable to all penalties and forfeiture as before the sale.

This statute was passed to govern cases exactly like this,

and it will trouble the ingenuity of respondent's counsel to imagine a case that this statute would control if not this one.

Again: under the twenty-seventh section of the same statute the corporation have one year to redeem after the sale, and in this case the Sheriff executed his deed and this action is brought in less than seven months after the sale; and I might, with confidence, rest this case solely upon the statute, confident that the Court can come to no other conclusion than that the plaintiff acquired no rights under this sale.

Counsel for respondent upon the argument contended that they only sold the land over which the road was constructed, and not the franchise. I contend that the only interest or right that the defendant had in the land was the franchise itself—an easement or right of way over the land; and all the authorities define it as such.

A turnpike company own the *road*, but not the ground over which it passes; and their ownership of the *road* does not vest in them any right but such as is essential to the enjoyment of their rights and franchise. (*Kelly* v. *Donahoe*, 2 Metcalf, Ky. 482.)

The public have an interest in the road as much as the company, and their interest has been lost sight of entirely in this sale. After a most thorough examination of the reports of almost all of the States, I am unable to find but one case where a turnpike road has ever been sold absolutely, and that is the case of *Armant* v. *New Alexandria Turnpike Co.*, 13 S. & R. 210. It was that case which, I believe, was the cause of the State of Pennsylvania passing an Act whereby creditors could enforce their judgments against such franchises.

The defendant was incorporated by virtue of an Act of the Legislature for a special purpose in which the public are much interested. The only right defendant had was, under the corporate law, to enter upon the land of the Government, construct a road, and when complete, to collect certain tolls, and, for such right they were compelled to keep the road in repair, and were responsible for all damages caused by their negligence; and under our statutes, as cited, after a sale of their

road, with the purchaser in possession, the company are under the same responsibilities, and the only right or control the purchaser gets is to collect the tolls.   It would be an absurdity to contend that after the company had been sold out absolutely, they should be subject to all their original responsibilities, yet, the position of the counsel for appellants in connection with the statute would place the defendant in that position.

And again: in the case of *McKeon* v. *Odom*, 3 Bland, Maryland Chancery, 422, Chancellor Bland, in his opinion, says: "The road itself cannot be taken and closed by virtue of *distringas*, or sequestration, because that, as one of the highways of the Republic, it could not nor ought not to be obstructed by any process whatever *against those whose only interest* in it is the toll they are allowed to exact in consideration of keeping it in repair."   And it seems to be the whole policy of all the law and decisions to protect Government and corporations in property of this kind from being sold so as to transfer the absolute ownership and control by forced sale to third parties, who might be wholly irresponsible, or close up the road entirely, and thus deprive the public of the use and enjoyment of one of the great thoroughfares leading across the Sierras; and there can be no doubt in the mind of the Court that the right of a corporation of constructing a road and collecting toll is a franchise, and is not at common law nor by our statute the proper subject upon which to levy and sell under execution, as in ordinary cases, and this doctrine and principal is fully discussed in *Seymour* v. *Mifford Turnpike Co.* 10th Ohio, 476, in which case a sale was had under a statutory law very similar to our statute.

Again: the Sheriff had no power or authority at common law to sell the fee in land, and his only authority in this State comes from the statute, and where the statute points out a way, in which way or what he must sell, (as the rents and profits first,) and he does not sell in accordance with the statute, his *deed* is void, and the purchaser takes nothing by his purchase; and I say that the deed from the Sheriff to the plaintiffs, and under which plaintiffs seek to recover in this action,

is absolutely void, and not voidable.    (*Lessee of Grantly et al.*
v. *Ewing et al.*, 3 Howard U. S. 707 ; 13 S. & R. 210.)

" The easement enjoyed by the public in a turnpike road is
vested in the public as much as that of a common highway."
(*State* v. *Main*, 27 Connecticut, 64.)

*Geo. Cadwalader*, also for Appellant.

An action of ejectment will not lie against one claiming an
easement in a parcel of land, to try his right to enjoy the same.
(*Jackson* v. *May*, 16 Johns. 184 ; *Doe* v. *Alderson*, 1 M. & W.
210 ; *Crocker* v. *Fothergill*, 2 Barn. & Ald. 652.)

Apart from the statute, these authorities show with great
clearness that a turnpike corporation takes nothing but an
"easement," or a "right of way," while the Act itself, which
vests the defendant with whatever faculties it possesses, merely
gives it the easement or right of way over public or private
property—while they also prove that for a right of way or an
easement the action of ejectment does not lie, and we are
warranted in declaring that it would be impossible for a Sheriff
to put a party in possession of a road thirty miles long, or to
eject the adverse party therefrom—the same being a highway
to which everybody has the right of access and transit, subject
to a single condition, and that he paid the tolls fixed by the
Board of Supervisors.    The Legislature, giving to the defend-
ant the mere easement, or the right of way, and reserving to
the public the use thereof upon the payment of toll, can
hardly be said to recognize such an estate or possession of the
land itself as would enable judgment creditors of a turnpike
corporation to sell and take exclusive possession of the road,
and to exclude the public therefrom by closing the highway
or obstructing it, for a doctrine of this kind would be at war
with every principle applied to highways, turnpikes, or roads,
and carried out to its logical conclusion, would enable A., a
creditor, to sell ten miles of the road, B., another creditor,
to sell five miles, and in this way defeat the rights of the pub-
lic, adjacent property holders, and place a most effectual
embargo on the trade of large sections of country.

In *Kelly* v. *Donahoe*, 2 Metcalf, Ky. 482, it was remarked: "A turnpike company own the road, but not the ground over which it passes, and their ownership of the road does not vest in them nor take from the owner of the land any right but such as is essential to the enjoyment of their own rights and franchises."

But the plaintiffs were not divested of the fee of the land by laying out the highway, nor did the public thus acquire any greater interest therein than a right of way. (*Perley* v. *Chandler*, 6 Mass. 454; *Jackson* v. *Hathaway*, 15 Johns. 447.)

Ordinarily—and we may say always—a person obstructing or claiming possession of a public highway is not proceeded against by the action of ejectment, but he is subject to arrest, and proceeded against criminally. (See Sec. 13 of Act "concerning roads and highways;" Wood's Digest, page 652; and also Secs. 32 and 33 of Act "concerning plank or turnpike roads,") under which the defendant organized as a corporation. And it would be the sheerest folly to suppose that the defendant's road, public in its character, with the tolls thereof regulated by the Supervisors, could be entered and fenced or obstructed by persons against whom the law would only furnish a remedy by ejectment.

*Vanclief & Bowers*, for Respondent.

The position most relied on seems to be that the *interest* which a turnpike company has in the land upon which it has dug and constructed its road, is but a mere easement, and therefore a part of the franchise. But it *is* not strictly or purely an easement within any definition we have ever seen. An easement proper is one species of incorporeal hereditaments, and consists of a right in the owner of one parcel of land by reason of such ownership to use the land of another for a special purpose without profit.

"The essential qualities of an easement," says Mr. Washburn, "are these: First—They are incorporeal; Second—They are imposed on corporeal property, and not upon the owner thereof; Third—They confer no right to a participation in the profits

arising from such property; Fourth—There must be two distinct tenements—the dominant, to which the right belongs, and the serviant, upon which the obligation rests." (Washburn on Easements, pp. 3, 8; *Wolf* v. *Frost*, 4 Sanf. Ch. 89.)

There are one or two other classes of rights which resemble easements, and partake of their nature, but which are not purely such.

" The above definition," observes Mr. Washburn, "does not embrace the class of rights which one may have in another's land, like a right of way or of common, without its being exercised in connection with the occupancy of other lands, and therefore called a right *in gross.*     *   *   *   But, after all, it partakes so much of the character of an easement, that, like the rights which the inhabitants in certain localities may acquire by custom, or the public by dedication, to pass over the land of an individual, for instance, it would be difficult to treat of easements and servitudes without embracing these rights, as well as that of taking profits in another's land, which one may enjoy in connection with the occupancy of the estate to which such right is united."

In *Post* v. *Pearsall*, 22 Wend. 432, Chancellor Walworth says : " Ordinary easements are either personal, and confined to an individual for life merely, or are claimed in reference to an estate or interest of the claimant in other lands, as the dominant tenant, for a profit *a pendre* in the land of another, when not granted in favor of some dominant tenement, cannot properly be said to be an easement, but *an interest or estate in the land itself.*"

If the right which turnpike corporations have to the land on which their roads are constructed is to be classed with those rights which resemble easements, it belongs to the latter species above named by Chancellor Walworth. The company is in actual occupancy of the land, and takes a *profit* from the use of it, of precisely the same nature of the profits taken by a railroad company.

" This," says Chancellor Walworth, " constitutes an interest or estate in the land itself, which is of course subject to

seizure and sale on execution, as held by the Court in *The State* v. *Rives*, 5 Iredell, 304."

In the case last cited, the charter of the railroad company provided for the condemnation of lands for the use of the road in the usual manner, and added that, after the company should acquire the right of way over lands in any of the modes prescribed by its charter, that it should have the same power and authority over such lands during the existence of its charter, and for the purposes of its road, " as though it owned the fee simple therein." This, the Court said, constituted the company " the tenant of the land for the term of its charter, subject to the earlier determination of the charter from any cause."

And the Court further remarked that some estate in the land was necessary for the preservation of the road—which is equally true of turnpike companies.

It is said, however, by appellants' counsel, that the charter of this company was peculiar, in giving a greater estate in the land than is usual in such cases, and greater than that given to turnpike companies in this State ; but we see no substantial difference.

Our statute (Wood's Dig., 654) which provides for the condemnation of lands, declares that a confirmation of the report of the Commissioners shall have the effect of a judgment on which execution may issue for the possession of the land. This, it seems to us, is fully equivalent to the provisions of the charter in the case above cited. It gives the turnpike companies full power and authority over the land for all the purposes of its road during the life of its charter, and, in addition to this, shows beyond controversy that turnpike companies have such an interest or estate in the land as may be seized and delivered by the Sheriff; for, if the company may receive the possession at the hands of the Sheriff, it ought not to be denied that the Sheriff may deliver the possession to a purchaser on execution. It will be seen, by reference to the authorities cited by appellants, that all of them, except one or two early Pennsylvania cases, apply to pure easements, to public rights

of way, and to those rights *in gross* which give no general possession nor profit.

Again : it is urged by the counsel for appellant that the right to take *toll* is a part of the franchise, and that the company has lost this right by the sale, etc.

Whether the right to take toll be a part of the franchise or not, it is but a conditional right, and cannot be exercised until the company has a road in travelling order, nor after the company has lost its road by sale or otherwise. In other words, the right is limited to taking toll upon its own road, and does not extend to one which has passed from it, either by its voluntary act or by a judicial sale.

In this State, the remedy by sale of the franchise is not exclusive, for the same section (20th) which provides for a sale of the franchise also provides for a sale of all the corporate property, both real and personal, on execution. A particular mode is required for the sale of the franchise, but the other property is to be sold as in other cases. When the judgment creditor elects to sell the franchise, he must bid the full amount of his judgment, and satisfy it, so that he cannot afterward look to the personal liability of stockholders. If his judgment is twenty thousand dollars, and the franchise is only worth five thousand dollars, he cannot sell the franchise for its value and then resort to the stockholders for the balance, but must allow the sale to satisfy the judgment.

*George R. Moore,* also for Respondent.

The interest of the defendant in this road is the same as that of any party upon the public lands of which he has the peaceable and exclusive possession, and on which he has made valuable improvements. This interest, under the statutes of this State, and under numerous authorities, can be seized and sold under execution in the same manner as other property.

The plaintiffs obtained a judgment against the defendant for a little less than ten thousand dollars, for work done and materials furnished in the construction of this very road, and it would be extremely hard and unjust if the defendant, after

the road had been built by the labor and money of the plaintiffs, could hold and enjoy the fruits and benefits of their toil without being compelled to pay for its construction.

The defendant has the exclusive possession, management, and control of this road, and this constitutes a perfect title as against the whole world, except the Government and its grantees.

Section two hundred and seventeen of the Practice Act provides that "all goods, chattels, money, and other property, both real and personal, or any interest therein of the judgment debtor, not exempt by law, and all property and rights of property seized and held under attachment in the action, shall be liable to execution. Shares and interests in any corporation or company, and debts and credits, and all other property, both real and personal, or any interest in either real or personal property," etc., shall be liable to seizure and sale under execution. No more comprehensive and explicit language than this could be used. Under it, every species and character of property, not exempt by law, and any interest therein of every kind and nature, may be levied upon and sold. Now, is the possession, rights, and claim of the defendant in this turnpike road *an interest in real or personal property ?* If so, it can be sold under execution and conveyed by the Sheriff; if not, the company has no interest whatever in the road, and no right or power to defend this action.

"Property," says Mr. Chief Justice Spencer, in *Jackson* v. *Housel,* 17 John. 283, "is the exclusive right of possessing, enjoying, and disposing of a thing; it is the right and interest which a man has in lands and chattels to the exclusion of others, and the term is sufficiently comprehensive to include every species of real and personal estate."

In connection with his many other fallacies, appellant's counsel argues that the interest of defendant in this road is a mere easement over the land over which the road runs. The company undoubtedly has an easement or right of way—but it has much more. It had this before it commenced to build its road; but when it took actual possession, and performed

labor all along the line of the road in excavating, filling up, bridging, building toll houses, gates, etc., it acquired a good title to the soil as against the whole world, except the Government. The policy of the Government from the first organization of the State has been and is to give to the occupant of public lands such a title to and interest in the soil as to enable him to maintain possession by ejectment and other modes, and thus encourage him to develop the resources of the country.

The reason urged why ejectment will not lie is, that the Sheriff cannot put the party in possession. But this view, under our statute and under the authorities, will be found to be a mistake.

The objection was fully answered by Lord Mansfield in the case of *Goodtitle* v. *Alker*, 1 Burr, 133–145. He says that where the easement does not pass, the Sheriff delivers the possession subject to the easement.

You might as well say that ejectment would not lie for lands in the present possession of a tenant, because the Sheriff cannot deliver the actual possession; and yet it has been held in numerous cases that such action would lie, and was the proper remedy.

Although the interest of a person owning a church pew is only *usufructuary*, yet ejectment will lie for its recovery. (*Baptist Church* v. *Wetherell*, 3 Paige, 296 ; *Ithaca Church* v. *Bigelow*, 16 Wend. 32.)

It is a well settled rule of the common law that ejectments will lie wherever the right of entry exists, and the interest is tangible. It will lie for anything attached to the freehold whereof the Sheriff can deliver possession.

If it will lie for things attached to the lands, it most certainly ought to lie for the land itself.

It will lie for a coal mine. (*Comyn* v. *Kynets*, Cor. Jac. 150; *Comyn* v. *Wheatly*, Noy, 121.) Also for a fishery. (*King* v. *Old Arlesford*, 1 T. R. 358.) Also for a mining claim. (*Pennsylvania Mining Company* v. *Owens*, 15 Cal. 136 ; *Lowe* v. *Alexander*, 15 Cal. 302.) Also for the right to herbage or

grass. (*Wheeler* v. *Toulson*, Hard. 330; Adams on Eject-
ment, 24.)

By the Court, SHAFTER, J.

This is an action of ejectment. It is averred in the complaint
that the defendant is "a body politic and corporate, duly organ-
ized under and by virtue of the laws of the State of Califor-
nia;" that "on the 27th day of May, 1862, the said plain-
tiffs were seized and possessed of and lawfully entitled to the
possession of all that certain turnpike road and the land upon
which the same has been constructed, built, and excavated,"
lying between certain *termini* named; "said road being about
fifty feet in width, bounded on each side by the public lands
of the United States, and wholly within said County of Sierra;
also, all the bridges, toll gates, and toll houses upon said road
and the line thereof, or attached thereto; together with all
and singular, the hereditaments, rights, and privileges unto
the said road, land, bridges, toll gates, and toll houses, belong-
ing or in anywise appertaining.   *   *   *   And being so
seized and possessed and entitled to the possession of the above
described property and premises, the defendant, by its agents,
on said 27th day of May, 1862, wrongfully and unlawfully
entered upon the same, and wrongfully and forcibly ejected
the plaintiff therefrom, and still wrongfully withholds the same
and the possession thereof from the plaintiffs."

The answer admits that the defendant is a corporation, duly
organized, etc., but denies all the other allegations.

The trial was by the Court. The defendant appeals from
the judgment and from the order overruling defendant's motion
for a new trial.

The plaintiffs, at the trial, to prove their title alleged in the
complaint, offered in evidence the judgment roll in an action
brought by them against the defendant, by which it appeared
the plaintiffs, on the 23d day of September, 1861, recovered
a judgment against the defendant for the sum of nine thousand
eight hundred and forty-eight dollars. They also offered in
evidence an execution issued upon said judgment, together

with the officer's return thereon, showing that the Sheriff on the 28th of October, 1861, levied " upon all the right, title, interest, claim, and property of the Truckee Turnpike Company in and to the Truckee Turnpike Road, a highway," etc.; and " advertised all the above described property for sale at public auction," etc.   *   *   *   " And on the 23d day of November, 1861,   *   *   *   sold the same to D. S. Wood and son for the sum," etc.   The plaintiffs also offered in evidence the Sheriff's deed to the plaintiffs.   The deed is not inserted in the record, but we shall assume its subject matter to be identical with the subject matter levied and advertised and sold, viz : " All the right, title, interest, claim, and property of the Truckee Turnpike Company in and to the Truckee Turnpike Road, a highway," etc.

The defendant objected to the introduction of these documents, and on grounds sufficiently comprehensive to include all the questions of error that we shall have occasion to consider.

The discussions in this case have taken a wide range, and involve questions of law of great practical moment, which have not been passed upon as yet in this State by the Court of last resort.   In considering the case we shall, however, refrain from passing upon questions a decision of which is not necessary to a just determination of the appeal upon its merits.

The general question raised by the record is, whether the plaintiffs by the Sheriff's deed aquired any property rights, and if they did, then were the rights so acquired of the character recognized by the law as the basis of an action of ejectment.

1.   The franchise of the defendant did not pass by the Sheriff's deed, nor by the Sheriff's return under the Act of 1850, (Wood's Digest, 118, Sec. 24,) and for the following reasons : Franchises are special privileges conferred by Government on individuals, which do not belong to the citizens of the country generally by common right.   (A. & A. on Corps. Sec. 4.)   The persons to whom such privileges are granted hold them in personal trust, and therefore they cannot be transferred by

forced sale, (*Munroe* v. *Thomas*, 5 Cal. 470 ; *Thomas* v. *Armstrong*, 7 Cal. 286,) nor by voluntary assignment (Redfield on Railways, 419–422,) unless by the permission of Government, and even then, if a special mode of transfer is pointed out, that mode must be followed.    Therefore the franchises of the defendant did not pass to the plaintiffs by the Sheriff's return nor by his deed, for the mode of sale prescribed by the Act of 1850 was not followed.

Again : the sale does not purport to have been a sale of the franchises of the company, and for that reason the plaintiffs can have no interest in them.    All that was offered for sale, and all that the plaintiffs bought was the "road."    Even if the plaintiffs by their purchase acquired a title to the "road," still they could not claim the franchises as appurtenant to the road, for franchises are principal things, and lie in grant as such. They are appurtenant to nothing.

2.  The plaintiffs acquired nothing by the purchase of the "road" to which the action of ejectment has any remedial relations.    "Road" is a legal term, strictly synonymous with the term "way," and in the complaint, and throughout all the title papers of the plaintiffs, their identity is fully recognized. A way is an easement, and consists in the right of passing over another man's ground.    (Wash. on Eas., 161.)    It is an incorporeal hereditament, a servitude imposed upon corporeal property, and not a part of it.    It gives no right to possess the land upon which it is imposed, but a right merely to the party in whom the way is vested to enjoy the way.    Neither is it considered that the owner of the way is entitled, by reason of such ownership, to a participation in the rents and profits arising from the land upon which the easement is imposed. (Wash. on Eas., 8.)    A deed of a way or of a right of way would pass to the grantee no title to or interest in the land. . It may be true, as was held in *Sparks* v. *Hess*, 15 Cal. 186, where the owner of a private bridge, who also owned the land on which the bridge rested, had conveyed the "bridge and all the privileges and appurtenances appertaining or in anywise belonging to said bridge," that the deed passed the title of the

land on which the bridge rested.   In the first place, a bridge is a visible structure, and not in itself an incorporeal hereditament; and in the second place, the abutments of a bridge are considered a part of it.   (*King* v. *West Riding of York*, 7 East. 588; *Bardwell et al* v. *Jamaica*, 15 Vt. 438.)   The fact that a certain descriptive term used in a deed has been held to include what it obviously does include, is certainly not authority for holding that another term includes what it obviously does not include.   The authoritative definition which we have given of the term "way" shows that neither land, nor rents of land, nor profits of land, nor any possessory rights in land, are included in its meaning.   If the plaintiffs, then, took anything by force of the term "road," they took nothing but a right of way.   But it is well settled that an action of ejectment will not lie in favor of a party to try his right to enjoy an easement, nor will it lie against one claiming an easement in land to try his right to enjoy it.   (*Childs* v. *Chappell*, 5 Seld. 246, 251; Wash. on Eas., 568.)   And the reason is obvious—the very subject matter of controversy is incorporeal.   It is for that reason that an easement "lyeth in grant, and not in livery." It is for that reason that the owner of a way cannot be disseized or otherwise ousted of it; he can only be "disturbed" or "obstructed" in its enjoyment, and for such injury the remedy is by action on the case at common law, or by bill in equity.   The rule is stated in Tillinghast's Adams, p. 19, as follows: "Ejectment is maintainable only for corporeal hereditaments."

3.   But there is another ground upon which we hold that the plaintiffs acquired no title to the land traversed by the road, and no possessory interest in it.   The defendant had no such title or interests to be transferred.   The reason is found in the want of capacity in the company to hold lands by title. The capacity of corporations to take and hold lands in full ownership was unlimited at common law.   The vast social and political abuses engendered by this state of things induced the passage of the statutes of mortmain, ranging from the 9th of Henry III to the 9th of George II.   The Act of 1850, pre-

viously referred to, is a statute of mortmain, in so far as it limits the capacity of corporations to take and hold lands. The provision is as follows: " They (corporations) may take and hold such real and personal estate as the purposes of the corporation shall require." Under this provision the capacity is not absolutely fixed. It depends upon occasion. An estate in land adequate to the necessities or reasonable convenience of one class of corporations might be inadequate to the needs of another. We consider, however, that a turnpike company, *prima facie*, has no occasion for any larger interest in land than a way over it. This has been fully demonstrated, as a general truth, by a wide and unbroken observation and experience. On this point the authorities are numerous and decisive. We cite *Tucker* v. *Tower*, 9 Pick. 108; 3 Kent, 532, 8th ed.

It appears that the lands traversed by the Truckee Turnpike are public lands of the United States, and it is urged that inasmuch as settlers on public lands are considered as the owners of their possessory claims as against all the world except the Government, and are therefore allowed to sue and are held liable to be sued in ejectment, that symmetry of decision requires that the like rule should be applied in the case of turnpike corporations whose roads cross public lands. The argument proceeds upon a false analogy. Settlers, as natural persons, have an unlimited capacity to acquire estates in land, and to hold them indefinitely when acquired. Turnpike companies, *prima facie* at least, can take no estate in land above the level of a servitude upon it. Again: the possessory interests of the settlers named are not analagous to easements or servitudes.

4. But the plaintiffs did not acquire a title to the " road" or way, which, so far as words are concerned, they purchased at the Sheriff's sale.

The way levied upon and sold as the property of the company did not belong to it by any proprietary right. The way was *publici juris*. Its uses were not only public, but it belonged to the public by title. All the interest that the company had in the matter was by reason of the fact that it

62

had both the right and the power to collect tolls on the line of the road, as a compensation for the public service it had performed by opening a public road for the public good. In legal theory, " A turnpike is a public highway, established by public authority for public uses, and is to be regarded as a public easement, and not as private property. The only difference between this and a common highway is, that instead of being made at the public expense in the first instance, it is authorized and laid out by the public authority, and is made at the expense of individuals in the first instance; and the cost of construction and maintenance is reimbursed by a toll levied by public authority for this purpose. Every traveller has the same right to use it, paying the toll established by law, as he would have to use any other public highway." (*Commonwealth* v. *Wilkinson*, 16 Pick. 176.) In pursuance of this doctrine it has been considered (*Erie and Northeast Railway* v. *Casey*, 26 Penn. 287) that the land is not disburdened of a railroad easement by the surrender, forfeiture, or other determination of the charter, but remains subject to it still as a subsisting public right.

Without passing upon the other interesting and important questions raised by counsel, we consider that the ruling of the Court below, in admitting the plaintiff's documentary evidence of title, was erroneous; and inasmuch as the facts found by the Court do not warrant the judgment, the judgment is reversed, and the cause remanded with directions to enter judgment, upon the findings, for the defendant.