HALE & a. v. THE NASHUA & LOWELL RAILROAD & a.

A bill in equity by bondholders seeking to foreclose a railroad mortgage, and also to recover bonds claimed by a part of the plaintiffs and alleged to be wrongfully held by one of the defendants, is not bad for multifariousness.

When the title to bonds, claimed by both parties to the bill by different assignments from the same person making no claim to the bonds, is in dispute, it is not necessary to join the assignor as a party.

A lease of a mortgaged railroad, made by the mortgagor without the consent of the mortgagees, is inoperative against them, and cannot be set up to defeat a foreclosure of the mortgage.

D. & B. contracted with the M. & K. R., one of the defendants, to construct its railroad for, among other things, $40,000 cash, to be paid in monthly instalments by the N. & L. R., another defendant, who had promised to loan that sum to the M. & K. R. on its notes and securities agreed upon and delivered. The N. & L. R. exacted of D. & B., as a condition of paying the money, double the amount of bonds in the M. & K. R., which D. & B. deposited with the N. & L. R., and subsequently assigned to the plaintiffs as security for money advanced by them to D & B. to aid in the construction of the railroad. After the insolvency of D. & B., and without the knowledge or consent of B. or of the plaintiffs, D. assigned the bonds to the N. & L. R. In a a suit for the recovery of the bonds,—*held,* that the N. & L. R. had no title to them against the claim of the plaintiffs, to whom they should be delivered.

In a suit for the foreclosure of a railroad mortgage, the trustees of the mortgage bondholders should be parties.

A receiver's expenditures, made under the direction of the court, for preserving, completing, and operating a railroad, may be made a preferred claim against the road.

BILL IN EQUITY, by the bondholders of the M. & K. R. for the adjustment of priorities, and the foreclosure of the mortgage. The bill is brought for the benefit of all bondholders who choose to join as plaintiffs, and alleges the charter of the railroad; its mortgage to Lane, White, and Dearborn, trustees of the bondholders to secure $500,000 of bonds; a vote of gratuities by various towns on the line of the railroad, amounting to something more than $175,000; the construction of the road from Greenfield to Hancock in 1877 by issuing $60,000 of its mortgage bonds, assigning the Hancock gratuity of $17,000, and by a loan of $20,000 of the N. & L. R., for which the M. & K. R. gave its note for that sum, and pledged as collateral security $20,000 of the bonds, and, as additional security, in October, 1877, gave to the N. & L. R. a lease of the whole railroad, in which it covenanted to complete the road by December 1, 1878, and, on failure to do that, gave the lessee the right to finish and hold the road until reimbursed, with the right to give up the road at any time, and the lessee agreed to operate the road from Greenfield to Hancock, and apply the net earnings upon the loan of $20,000 until it should be paid; a con-

tract, April 4, 1878, by the M. & K. R. with Dawe & Bonallie to construct the remaining part of the line on or before December 1, 1878, for certain sums of money to be paid, gratuities to be assigned, and bonds and stock to be delivered; the assignment of the gratuities and delivery of the bonds and stock by the M. & K. R. to D. & B., who constructed the road so that it was opened for traffic on the first of December, 1878, although it was not then completed, an estimated outlay of $17,500 being required for that purpose; an agreement by the N. & L. R. to loan to the M. & K. R. $40,000 on its note for that sum, to be secured by a pledge of bonds of that amount at par value, the money, on the understanding of the parties to the loan, to be paid by the N. & L. R. directly to D. & B. as they might need and call for it in the construction of the road, but the N. & L. R. refused to comply with the terms of the agreement, and, though having the note and stipulated amount of bonds of the M. & K. R., exacted of D. & B. $80,000 in bonds as a condition of paying the $40,000, and as security for completing the road according to the terms of the contract, and ever since have retained the bonds; the insolvency of D. & B. in the construction of the railroad, who used all their means and credit on that account, and could not complete the road for want of further credit, and whose loss of credit, insolvency, and consequent failure to complete the road were the direct result of the exaction from them by the N. & L. R. of the $80,000 in bonds; the advancing of money in large sums in the progress and in aid of the construction of the railroad to D. & B. by a part of the plaintiffs, who received from D. & B., as security for the advancements, an assignment of the gratuities and of the bonds held by them, including the $80,000 delivered by them to the N. & L. R., which the latter have refused to deliver to the assignees on demand; subsequently a release, assignment, and sale of all the interest of D. & B. in the $80,000 bonds to the N. & L. R., made by D. without any authority, knowledge, or consent of B. after the insolvency of that firm, without consideration, and in fraud of their creditors; the operation of the road irregularly by the M. & K. R. hiring rolling-stock of the N. & L. R. from December 1, 1878, to about March 1, 1879, when the latter withdrew their rolling-stock, and the road has not been operated since; the insolvency of the M. & K. R., and its inability to complete and operate the road without further assistance; the purchase by the N. & L. R., of Wood, the president and a director of the M. & K. R., of the bonds and stock in the M. & K. R. sufficient to give the N. & L. R. a controlling interest in the M. & K. R. on the unauthorized representations and assurances of Brooks, president of the N. & L. R., that that company would proceed at once to complete the road, and open and operate it, which assurances have never been fulfilled, but, on the contrary, the N. & L. R. has refused to repair, complete, or operate the road, or permit the plaintiffs, who were will-

ing to do so, if they could have the securities advanced for that purpose, and, by its acts, refusals, and exactions, has prevented the completion and operation of the road, and suffered it to go to wreck and decay; the directorship in the N. & L. R. of Dearborn and White, two of the trustees of the bondholders, and their acting in the interest of the N. & L. R.; prayers for their removal, and the appointment of others in their stead; for a receiver; for the delivery of the $80,000 of bonds to the plaintiffs; for declaring the lease void; for making the expenditures of the receiver a first lien on the road; for a list of bondholders, to be prepared under the direction of the court, with the determination of their respective rights as to voting preliminary to a meeting of the bondholders for the choice of trustees, and for a decree of foreclosure.

The defendants demurred for multifariousness, because D. & B. were not parties, and because neither D. & B., nor the plaintiffs holding under them, could have any lawful claim to the bonds without first refunding all sums paid by the N. & L. R. to D. & B. on account of them, and because, if the claim of the N. & L. R. to the bonds is not sustained, they belong to the M. & K. R., and answer denying all allegations of the bill which give the plaintiffs any right in equity by assignment, and all which set out any wrong or injury to the plaintiffs by the defendants. The court overruled the demurrer, and the defendants excepted. A receiver was appointed, with instructions to put the road in a sufficient state of repair for its preservation, and to be operated, and to permit the N. & L. R. to furnish the means and to operate it; and if that company declined, to permit any parties interested who were willing to do it. The defendants excepted to the removal of the trustees, and moved for their reinstatement, and that the appointment of others be made by Lane, the remaining trustee; and also moved for the discharge of the receiver. The court found the material allegations of the bill proved.

*W. E. Chandler*, with whom were *Briggs & Huse*, for the plaintiffs. The bill is not multifarious. It being in substance a foreclosure suit, all the complaints and forms of relief sought are incidental to the foreclosure.

The $80,000 of bonds should be delivered to the plaintiffs. There is reason to fear that the large amount of bonds which the N. & L. R. hold as collateral security from the M. & K. R. would, with the $80,000, give the N. & L. R. the control of any bondholders' meeting. The bonds were D. & B.'s, and by them assigned to the plaintiffs. The N. & L. R. has no lawful claim to them. Its exaction of the deposit from D. & B. was without consideration. If the exaction was valid, the condition has been complied with by the completion of the road. The assignment to the N. & L. R. by D., after the insolvency of D. & B., and without the knowledge of B. or of the plaintiffs, was fraudulent in law

and in fact, and gave no title. After the delivery of the $80,000 of bonds, and a list of bondholders is prepared under the direction of the court, a meeting of bondholders, as provided by statute, should be held.

The lease being subsequent in date to the mortgage, is inoperative against the bondholders, and the trustees should be authorized to sell the road free from the lease.

The trustees, Dearborn and White, being interested as officers in the N. & L. R., cannot impartially act, a conflict of duty being involved. They were properly removed, and should not be restored.

The receiver was properly appointed, and authorized to expend or allow the plaintiffs to expend sufficient money to put the road in operation, and these expenditures should be made a first lien on the road. *Meyer* v. *Johnston*, 53 Ala. 237; *Stevens* v. *Davison*, 18 Gratt. 819; *State* v. *Railway Co.*, 18 Md. 193; *O. & M. R.* v. *Fitch*, 20 Ind. 498; *Coe* v. *C., P. & I. Railroad*, 10 Ohio St. 372; *Northern Railroad* v. *Concord Railroad*, 50 N. H. 166; *Stanton* v. *Railroad Co.*, 2 Woods C. C. 506; *Wilmer* v. *Atlanta Railway*, 2 Woods C. C. 409; *Kennedy* v. *Railroad*, 2 Dill. 448; *In re McElrath*, 2 Dill. 460; *Lacrosse Bridge Case*, 2 Dill. 465; *W. W. V. C. Co.* v. *Vallette*, 21 How. 415; *Railroad* v. *Cowdrey*, 11 Wall. 459; *Jerome* v. *McCarter*, 94 U. S. 734; *Gardner* v. *Railway Co.*, 2 L. R. (Ch. Ap.) 201.

After opportunity for a bondholders' meeting and the choice of trustees, permission should be given to foreclose the mortgage.

*Bailey* and *Brooks*, for the defendants. The plaintiffs aver that the bill is brought for the benefit of all bondholders in the M. & K. R. who choose to join as plaintiffs; and the N. & L. R. being made a party plaintiff, and being one of the defendants, the bill cannot be maintained.

The plaintiffs have an adequate remedy at law for their claim for the $80,000 in bonds in damages, and can have no relief in equity.

The bill is multifarious, in that no single judgment or decree could be made in favor of all the plaintiffs, or against all the defendants. Sto. Eq. Pl., s. 538; Mitf. Eq. Pl. [181], s. 9. And the bill cannot be maintained for the nonjoinder of D. & B., the assignors of the bonds. Mitf. Eq. Pl. [179]; Sto. Eq. Pl., s. 153.

The bill cannot be maintained because the assignment of the bonds by D. & B. to Hale and Colony, two of the plaintiffs, was to take effect on the completion of the road according to the contract, and its acceptance by the M. & K. R.; and the road, by the bill, had not been completed at the beginning of the suit. By the terms of the deposit of the bonds by D. & B., neither they nor their assignees, the plaintiffs, could maintain any action for the bonds.

The bill shows that D. & B.'s contract was broken. The N. &

L. R. were under no obligation to loan the $40,000; the offer was gratuitous, and could be revoked at any time, and the payment of the money to D. & B. was within the discretion of the committee, who might exact the bonds as additional security. The title of the N. & L. R. to the bonds being by delivery and possession, it cannot be defeated only by proof of fraud.

The plaintiffs, as holders of bonds of the M. & K. R., cannot maintain a suit to foreclose a mortgage in their own names. The suit could only be maintained in the names of the trustees. *Shaw* v. *Norfolk Co. Railroad*, 5 Gray 162; *Railroad* v. *Orr*, 18 Wall. 471.

The lease cannot be declared inoperative, because, it being shown by the bill, no facts are averred which make the lease void or inoperative. The expenditures of the plaintiffs under the receiver was voluntary, and cannot be made a first lien. The establishment of a lien for such expenditures can only be effected on application of the mortgagees, and by order of court beforehand. The removal of the trustees White and Dearborn, if the bill to foreclose cannot be maintained, must fall with the bill, as the order for removal was only interlocutory. The trustees are not removable by court except for misconduct or incapacity. 1 Perry Trusts (2 ed.), s. 277; Edw. Rec. (2 ed.) 35; Sto. Eq. Jur., s. 1289; *Knapp* v. *Railroad*, 20 Wall. 122. Neither disagreement among the trustees (*Gibbes* v. *Smith*, 2 Rich Eq. 131; *Forster* v. *Davies*, 4 DeG., F. & J., 133), nor where there has been no violation of the trust (*Berry* v. *Williamson*, 11 B. Monroe 245), nor even every violation of duty, unless the trustee has acted in bad faith or the fund is endangered (*Lathrop* v. *Smalley*, 23 N. J. Eq. 192), will authorize the removal of the trustees.

ALLEN, J. A leading object of the bill is the foreclosure of the mortgage securing the bonds of the Manchester & Keene Railroad, and the bill is brought for the benefit of all the bondholders, who join as plaintiffs. Though the interests of the bondholders are several, and not joint or common, they are properly joined as parties. *Bell* v. *Woodward*, 42 N. H. 181, 189, 190. The interests of all the parties in the property, and their respective rights relatively, and how those rights may be affected by any decree upon the property, must necessarily be considered. Incident to the leading object of the bill, the claim of the plaintiffs seeking to compel the delivery to two of themselves, Hale and Colony, of $80,000 of the bonds held by one defendant, the N. & L. Railroad Co., is a proper demand. The possession of the property mortgaged to secure the creditors of the wrecked railroad would be of little or no value to those creditors, unless their relative rights in the property were first determined. It would not be a recovery of the railroad property by its creditors, to whom it has been pledged for security, if one creditor, through collusion with the debtor or other fraudulent

means, could secure to itself an undue share of the security. Under such circumstances, a decree for the possession of the property would be futile to the extent of any bonds so held, and the equitable adjustment to which the parties are entitled would not be accomplished. The bill is not multifarious. *Abbot* v. *Johnson*, 32 N. H. 9; *Chase* v. *Searles*, 45 N. H. 511; *Eastman* v. *Savings Bank*, 58 N. H. 421.

It was not necessary to join Dawe & Bonallie as defendants. Their interest in the property sought to be recovered had ceased by assignment. If some of their assignments were not valid against creditors, other assignments covering all the property remaining in their hands are claimed to be valid; and the controversy here is not between the creditors and Dawe & Bonallie, but between the creditors of an insolvent and wrecked railroad and the railroad itself, and between each other as to priority of assignments. No advantage could accrue and no rights be affected by making Dawe & Bonallie parties.

The transaction by which Dawe, one of the firm of Dawe & Bonallie, sold and assigned all that firm's interest in the $80,000 of bonds to the N. & L. Railroad, was void. It was void generally, because it was not made within the general scope of the business of the partnership, and was without the knowledge or authority of the other member of the firm. It was void as to all the creditors of the firm because the firm was insolvent, and the N. & L. R. had, at the time of the transaction, full knowledge of the insolvency. On both grounds it was void as to the plaintiffs.

The exaction of the deposit of these bonds by the N. & L. R. from Dawe & Bonallie was without consideration. The N. & L. R. contracted with the M. & K. R. to loan the latter $40,000 on its notes, and a deposit as collateral security of an equal amount of its bonds. On the credit of this agreement, the M. & K. R., by means of a contract with Dawe & Bonallie, to a large extent constructed its railroad. Having expended the credit given by a promise of the loan in the actual construction of the road for which the loan was intended, and having given its notes and bonds according to the terms of the agreement, the consideration was complete, and the creditor could not demand further consideration as a condition of paying the money. Having received the consideration agreed upon, it could make no difference that the money was collected by and paid to Dawe & Bonallie, the contractors. Having paid the money on a consideration actually agreed upon and received, that consideration was the measure and support of the loan, and the exaction and reception of anything beyond from the same or another party, without other consideration than the loan of $40,000, was upon no consideration.

There was no understanding on the part of the M. & K. R. that the N. & L. R. should, as a condition of paying the money to Dawe & Bonallie, exact and receive a deposit of other bonds from the

contractors, either as security for the loan, or for completing the road according to the terms of the contract. When satisfied that the money was applied to the purpose for which the loan was made, to wit, the construction and completion of the road, good faith required that they should advance it on the security originally agreed upon. So far as there was contract and consideration, they were between the M. & K. R. and the N. & L. R. on the one hand for the loan, and between the M. & K. R. and Dawe & Bonallie on the other hand for constructing the railroad. No privity of contract, for which the deposit of $80,000 could be a consideration, existed between the N. & L. R. and Dawe & Bonallie.

The exaction of the bonds was inequitable. The N. & L. R. could make no valid claim to hold them for the satisfaction of damages arising from a failure to complete the road within the time contracted for, for the exaction of the bonds was the cause of the failure to complete the road. The contractors could not finish the road within the time agreed upon because they became insolvent, and they became insolvent because of the undue exaction of the bonds. The M. & K. R. agreed to pay the contractors in money, bonds, stock, and gratuities assigned. They relied on the money, and on the bonds to raise other money, necessary to enable them to fulfil the contract. To realize the money promised by the N. & L. R. they were compelled to part with a large amount of the bonds, and so were deprived of the means of raising a sufficiency of funds to complete the road before the whole consideration was exhausted. For the contractors' failure to complete the road within the agreed time, the N. & L. R. is responsible by an unwarrantable exaction of the bonds, and they cannot in equity claim to hold them as indemnity for that failure..

The obvious purpose of the N. & L. R. appearing from its whole conduct has been to obtain the entire control of the M. & K. R. However laudable and lawful this purpose, in view of the local and business connection of the two roads, may have been, the undue acquisition of the bonds and securities of the new railroad by the old one, by an exaction so unreasonable and oppressive as to cause the financial ruin of the contractors and produce a breach of their contract, leaves no equity as a foundation for their claim. Received without consideration and since held by inequitable methods, the N. & L. R. cannot now claim to hold the bonds against their assignment to creditors as security for large advances. The N. & L. R. must be decreed to deliver the $80,000 of bonds of the M. & K. R. to the plaintiffs, Hale and Colony.

The lease of the M. & K. R. held by the N. & L. R., being subsequent to the mortgage given to secure the bonds, cannot be set up by the lessee to defeat the rights of the bondholders. The lessee has no privity of contract with the bondholders, who are entitled to the whole property as security for the bonds, and the lease is inoperative in any proceeding under the mortgage.

The plaintiffs, who have furnished funds to the receiver to enable him to complete the road and put it in operation, claim a first lien on the property for reimbursement. The appointment of a receiver was necessary for the preservation of the property for the bond-holders and others interested, and to secure to the public any benefits it might be entitled to from the grant of the franchise. The neglect or inability of the corporation, and the neglect, inability, or refusal, of any or all the bondholders, by reason of disagreements, controversies, and fear of further loss, to complete and put the road in operation, left the property created by large advances and expenditures unproductive and fast going to ruin. The expenditures of the receiver in saving the property and rendering it productive have been for the benefit of all the bondholders, and it would be inequitable, and a hardship on those who have furnished the means of creating a substantial benefit for all, to bear the whole burden. Reasonable expenditures of this kind made by trustees appointed by the court, in preserving and giving permanent value to property pledged as security for debts, have invariably been allowed and distributed so that all creditors should proportionally share the burden. *Cooley* v. *Brainerd*, 38 Vt. 394; *Blumenthal* v. *Brainerd*, 38 Vt. 402; *Meyer* v. *Johnston*, 53 Ala. 237; *Stevens* v. *Davison*, 18 Gratt. 819; *Ohio & Miss. Railroad* v. *Davis*, 23 Ind. 553; *Stanton* v. *Ala. & Chat. R. Co.*, 2 Woods C. C. 506; *Kennedy* v. *St. P. & P. R.*, 2 Dillon 448; *Cov. Drawbridge Co.* v. *Shepherd*, 21 How. 112, 124, 125; *Jerome* v. *McCarter*, 94 N. S. 734, 737, 738; *Fripp* v. *Chard Railway Co.*, 21 E. L. & Eq. 53. The cases denying priority of a claim for receivers' disbursements are where the expenditures are for the general management of the property, and not for the special purpose of saving the property from destruction under express directions of the court. The reasonable expenditures of the receiver in completing the railroad ready for operation, as they may be allowed, are given priority over other claims against the property.

The power of the court to remove the trustees and appoint others for the purpose of the due execution of the trust, is unmistakable. By the general law of trusts the court has full equity powers in all cases affected by a trust, and that the trust shall survive and be executed so as to effect the purposes for which it is established, the power exists in the court to remove and appoint other trustees. And by G. L., *c.* 196, *s.* 8, it is provided that "the supreme court shall have summary power to make all orders and decrees to carry such trusts into effect." The reasons which existed for the appointment of a receiver made a like necessity for a board of trustees, who could act together for the interest of all the bondholders without the embarrassment which came from the official connection of two of the former trustees with one of the defendants. The exception to the removal of the trustees and the appointment of others is overruled.

The trustees should be made parties to the bill. They need not continue longer than the necessity which demanded their appointment requires. To the end that a board of trustees may be chosen according to the provisions of G. L., *c.* 196, a list of bondholders entitled to act in the matter, with the amount of their bonds respectively, may be prepared, under direction of the court at the trial term, and a meeting of the bondholders called, at which new trustees may be chosen. This done, a decree for foreclosure of the mortgage, according to its provisions, may be entered.

*Case discharged.*

STANLEY, J., did not sit: the others concurred.