N. BAXTER, JR. *v.* NASHVILLE AND HILLSBORO TURN-PIKE COMPANY *et al.*

AND

JOSEPH SAUDEK AND WIFE *v.* NASHVILLE AND HILLS-BORO TURNPIKE COMPANY *et al.*

1. TURNPIKE COMPANY. *Insolvency. Chancery may impound tolls.* Chancery may impound the tolls of a turnpike company, and sell its entire property and franchises for the benefit of creditors, who will share equally when the company has become insolvent.

2. SAMᵉ. *Same. Franchises cannot be levied on.* Neither the franchises nor the roadway of a turnpike company can be levied on and sold by execution, nor perhaps any property essential to the exercise of the franchises of the company.

FROM DAVIDSON.

Appeal from the Chancery Court at Nashville. A. G. MERRITT, Ch.

N. BAXTER, SR. and COLYAR & SON for complainants.

J. J. VERTREES and D. CAMPBELL for defendants.

COOPER, J., delivered the opinion of the. court.

The Nashville and Hillsboro Turnpike Company was chartered by the act of 1848, ch. 218, and under its provisions, built its road, erected its gates, and exercised its franchises. The road from Nashville to the line between the counties of Davidson and Williamson is $9\frac{1}{2}$ miles in length, and extends into the county of Williamson about $7\frac{1}{2}$ miles. Several creditors of the company. recovered judgments against it in Davidson county, and caused executions thereon to be levied upon the road-bed and chartered width of way, the toll-gates, toll-houses and lots, and franchises of the company in the county of Davidson. At the sale under these levies, made May 11, 1878, N. Baxter, Jr. became the purchaser, and took from the sheriff a deed conveying him the property. In like manner, several creditors of the company recovered judgments against it in Williamson county, and caused executions thereon to be levied on the road, gates, lots and franchises in that county, and at the sale, made June 27, 1878, John B. Murray became the purchaser, and received a sheriff's deed. On August 21, 1878, N. Baxter, Jr., as the holder of several unsatisfied judgments against the company, filed the first of these bills against the company and John B. Murray to subject to the satisfaction of his judgments the equity of redemption of the company in the property thus sold and bought.

Such proceedings were had in the cause that a decree was rendered for a sale of the equity of redemption as prayed, and the sale was made and confirmed. Afterwards, and before the purchase money was paid out, the purchasers filed a petition to be relieved from their contract of purchase upon the ground that they acquired no title by their bid. The proceedings in the second of these causes were introduced in evidence, and, upon the hearing, the chancellor released the purchasers, and Baxter appealed.

On January 14, 1879, Joseph Saudek and wife, as judgment creditors of the Nashville and Hillsboro Turnpike Company, filed the second of these bills against the company, Baxter and Murray, to set aside the execution sales, and the sale of the equity of redemption, and to subject the property and franchises of the company to the satisfaction of all the debts of the company by a sale under the orders of the chancery court. The bill sought to impeach the good faith of the judgments of the defendants Baxter and Murray, and the proceedings thereon, upon the ground of collusion between them and the company. But of these charges, which were fully met by the answers, there was no proof. Upon final hearing, the chancellor was of opinion that the execution sales were void, that the company was insolvent at the date of the levy of the executions, and that the property and franchises of the company should be sold as an entirety for the benefit of the creditors equally.

The power of a court of chancery to impound the tolls of a corporation for the benefit of its creditors.

by the appointment of a receiver is well · settled :
*Drawbridge Co.* v. *Shepherd,* 21 How., 112. And the
jurisdiction to sell the entire property and franchises
under a mortgage or other contract is equally well
settled.: *Clay* v. *East Tenn. & Va. R. Co.,* 6 Heis., 421.
There has been a conflict of judicial opinion as to the
power of the court to make such a sale for the benefit
of creditors without the aid of a contract, but the con-
clusion reached in this State is in favor of the power:
*Gleaves* v. *Turnpike Co.,* 4 Baxt., 83. It is expressly
conferred by statute in certain cases: Code, secs. 3431,
4294. And it seems to follow necessarily from the
doctrine adopted in this State that upon the insolvency
of a corporation its property and assets become a trust
fund for the benefit of creditors, to be administered,
through the instrumentality of a court of chancery:·
*Marr* v. *Bank of West Tennessee,* 4 Cold., 471. The
doctrine was originally applied to banks or moneyed·
corporations, but has been -extended to railroad and
insurance companies: *Shea* v. *Mabry,* 1 Lea, 345; *Smith*
v. *St. Louis Mutual Life Ins. Co.,* 6 Lea, 564. In *Gleaves*
v. *Turnpike Company, ut supra,* the bill was filed by a
judgment creditor of the company, and it was held
that the chancery court had jurisdiction to subject to
sale, for the satisfaction of the debts of the company,
the road-bed, gates, toll-houses, land on which the
houses are situated, and the privilege of charging and
collecting tolls. And the defendants in the case before
us show that the turnpike company was in fact insol-
vent when their judgments were rendered, for they
offered to surrender the benefit of their purchases, if.

the company would settle their debts, which it was unable to do.

This conclusion renders it unnecessary to determine whether the defendants Baxter and Murray acquired any and what interest under their execution sales and purchases. It is very clear, however, that they acquired none of the franchises of the company. A franchise, being an incorporeal hereditament, could not, upon a settled principle of the common law, be seized under a *fieri facias* and delivered to the purchaser: Freem. on Ex., sec. 179; *Gue* v. *Tide Water Canal Company*, 24 How., 263. It seems equally clear that the defendants acquired nothing by the levy and sale of the road-bed and right of way, for the want of any estate of the company in the land over which the road runs. This has been expressly held in the case of turnpike companies in States in which every kind of interest in land, legal and equitable, was subject to execution: *Ammant* v. *Turnpike Co.*, 13 S. & R., 210; *Wood* v. *Truckee Turnpike Co.*, 24 Cal., 474. The act of 1848 says nothing on the subject of the interest of the company in the land over which its road runs, but gives the company the benefit of the provisions of the act of 1838, ch. 241, incorporating another turnpike company. By section 7 of this latter act, "the property in the said road when completed shall vest in the company and their successors for the purpose of a highway, which shall be free for all persons on the terms and conditions herein prescribed." This would seem only to confer a right of way for the exercise of the company's franchise, and bring the case

within the principle of the decisions cited.    By section 8 of the act of 1838, the president and directors of the turnpike company were authorized to purchase for the use of the company not exceeding one hundred acres] of land adjoining each toll-gate, and take conveyances therefor to themselves and their successors. This land, certainly as to so much thereof not absolutely necessary to the exercise of the franchise, might stand on a different footing from the roadway.    It does not appear, however, that there was more land adjacent to the gates, in the case before us, than was covered by the toll-house, and therefore essential to the exercise of the franchise.    The weight of authority is that the exemption of the franchise from levy will protect all property essentially necessary to its exercise, for the obvious reason that the franchise was conferred for a public purpose, and that there ought not to be any disposition of the property except in a mode which would secure a continuance of the use of the franchise for the benefit of the public.    The rights of creditors are sufficiently secured by the right to attach or impound the tolls, and, if necessary, to sell the property and franchises together.    It is sufficient in this case to hold that the chancellor was right in releasing the purchasers under Baxter's bill, and dismissing the bill both on the ground of the defect in the title to the property sold, and because the complainant was in a condition to redeem, if the execution sale were good, and could not file a bill to sell the equity of redemption: *Weakley* v. *Cockrill*, 6 Lea, 270; *Herndon* v. *Pickard*, 5 Lea, 704.    The chancellor was also correct in hold-

ing, under the second bill, that the defendants acquired no right to priority of satisfaction out of the corporate property by the levies and sales, and that the road, its property and franchises should be sold as an entirety for the benefit of all the creditors.

The decrees in both cases will be affirmed, and the second case remanded for further proceedings. The complainant in the first suit will pay the costs thereof, and the defendants Baxter and Murray will pay the costs of this court in the second cause in the first instance, but the costs of both cases will be eventually paid out of the proceeds of the sale of the road.