## CONNOR v. TENNESSEE CENT. RY. CO.

### (Circuit Court of Appeals, Sixth Circuit. June 4, 1901.)

### No. 893.

1. PROCESS—WHEN SERVICE BY PUBLICATION IS AUTHORIZED—POWERS OF STATES.

It is within the powers of a state to provide by statute for bringing into its courts nonresidents having interests in real property situated within the state for the purpose of enforcing a lien, or clearing a title, or subjecting the property to the satisfaction of debts, and that jurisdiction in such cases may be obtained by publication of notice to such nonresidents.

2. RAILROADS—RIGHTS OF PURCHASER AT JUDICIAL SALE.

A purchaser of railroad property at a judicial sale succeeds to all the rights of the former owner and of the holders of the liens and claims foreclosed, as against an unforeclosed lien, and it may intervene in a suit to enforce such lien, and assert the equities and rights to which it has thus succeeded, and if they are such that a sale under such lien will not convey a good title, but merely cloud the title of the intervener, the sale should not be ordered.

3. SAME—PROPERTY SUBJECT TO SALE ON PROCESS—SALE SEPARATE FROM FRANCHISE.

The property of a public corporation, such as a railroad company, cannot be sold under process separately and apart from its franchise, where such property is so indissolubly linked to the franchise and to the public functions of the corporation that without it the franchise will be rendered inoperative; and, under such rule, a decree directing the sale, to satisfy a debt, of a portion of the right of way and roadbed of a railroad, is inoperative, where the road has not been abandoned, nor the franchise under which it was built surrendered; and the court may properly refuse to award process for the enforcement of such decree, since the effect of a sale would be merely to cloud the title of the owner of the road and its franchise.

Appeal from the Circuit Court of the United States for the Middle District of Tennessee.

The Tennessee Central Railroad Company is a Tennessee corporation, authorized to construct and operate about 60 miles of railroad beginning at Monterey, in Putnam county, Tenn., and extending to a junction with the Cincinnati Southern Railway at or near Glen Mary. In September, 1893, said railroad company entered into a contract with the appellant, J. II. Connor, for the complete construction of said railroad, including the ironing of its road and the construction of depots, water tanks, switches, etc.; Connor to furnish all materials and obtain necessary rights of way. For this he was to receive a fixed sum, partly in money and partly in first mortgage bonds, both payable in installments as the work progressed. After grading a section of about 10 miles, beginning at Monterey, and extending east, he threw up his contract in April, 1894, claiming that the company had made default in payments, and was insolvent. May 25, 1894, he filed an original bill in equity in the circuit court of the United States at Nashville against the railroad company, claiming a balance due him for work done, and a lien therefor under the Tennessee statute giving to contractors a lien for work done in construction of any railroad. That bill averred that the said company was proceeding with the construction under contracts with other contractors, and asserted a lien for the balance due, not only upon the roadbed, bridges, trestles, culverts, etc., constructed by the complainant, but a lien upon the entire railroad, that constructed as well as that under construction, its franchises and property of every description. The bill prayed that the said railroad, including its franchises, should be sold for the payment of his debt and the enforcement of his statutory lien. It was not filed as a creditors'

bill, and the only defendant was the railroad company. The railroad company answered and defended, and such proceedings were had as resulted on May 28, 1896, in a decree fixing the liability of the railroad company at $21,421.78. The decree then proceeded as follows: "The court is further of opinion that the foregoing judgment is a lien upon portion of the defendant railroad company commencing with the town of Monterey, in the county of Putnam, and continuing in a southeasterly direction for ten miles; said strip of land being one hundred feet wide, upon which there has been constructed a roadbed for said railroad, fourteen feet wide at its crest; and that there are also within and upon said property various cuts, trestles, and bridges,—upon all of which said judgment constitutes a lien, the court being of opinion that complainant is entitled to have so much of said railroad sold for the satisfaction of the aforesaid judgment. It is therefore adjudged and decreed by the court that H. M. Doak, in his character as special commissioner under appointment heretofore made, will proceed at once to sell the above-described property after advertising the same as required by law or rule of this court. He will make said sale at the custom house in the city of Nashville, and will sell said property to the highest bidder for cash, free from any equity of redemption or repurchase. Said commissioner will make his report to the next term of this court how he has executed this decree." No step in execution of this decree was taken until October 28, 1899, when the order of sale was revived. On November 11, 1899, it was again revived, and the decree amended so as to require the property to be sold at the custom-house door in the town of Cookeville, in the county of Putnam, instead of at the custom house in Nashville. Before that decree of sale had been executed, the Tennessee Central Railway Company intervened, and by leave of the court filed a petition praying that the court would perpetually stay the execution of said order of sale, and protect its rights against the cloud which would thereby be thrown upon its title as the purchaser of the property and franchises of the Tennessee Central Railroad Company. A temporary injunction was granted, and Connor answered said petition, denying that he was ever a party to the Walker suit, and setting out that he was a nonresident of the state when that bill was filed, had never appeared in said suit, and was still a nonresident of Tennessee. He also took issue upon every material matter set up as a ground for restraining the execution of his decree. Upon the issues thus made up and the evidence the circuit court, upon final hearing, perpetually enjoined Connor from the enforcement of his lien by a sale of the roadbed described in his decree, but otherwise permitted the decree to stand unaffected. From this decree Connor has appealed.

The essential facts established and necessary to be regarded in the judgment to be pronounced are these:

Connor's bill was filed in the circuit court May 25, 1894. The bill was not a creditors' bill, and its sole purpose was to enforce the statutory lien of a railroad constructor for his exclusive benefit. While the bill prayed for the appointment of a receiver, none was in fact ever appointed, and the property against which he asserted his lien was never attached or otherwise taken into the actual custody of the court. On April 3, 1895, and before any final decree under Connor's bill, J. C. Walker and others, claiming to be creditors of the said railroad company, filed a general creditors' bill in the state chancery court for Cumberland county. The object of that suit was to set aside certain mortgages made by the company as fraudulent, and to have the company wound up as an insolvent corporation. The bill was filed for the benefit of all creditors, and sought to have all debts ascertained, all liens and priorities declared, and the property sold free from all liens and incumbrances, and the proceeds applied to the payment of debts in the order of their rank. October 23, 1895, the chancellor ordered the bill to stand as a creditors' bill, and that the clerk and master should make publication requiring all creditors to come in and make themselves parties on or before the first Monday in April, 1896, on penalty of being deprived of all the benefits of the suit. It was further ordered that the institution of any other suits against the said company be enjoined. On the same day a receiver was appointed, who was ordered to take into his possession all the property and effects of the said company. At the date of the filing of this creditors' bill

about 23 miles of the roadway of said company had been graded, and it is inferable that some bridge and trestle work had been constructed. Aside from this incomplete roadway and some cross-ties, bridge timbers, and commissary stores, it does not appear that said company owned any other property whatever, save certain conditional subscriptions to the stock of the company, dependent upon the construction of the railroad into or through certain mountain counties. The defendants named in the caption of the bill, other than the railroad company, included J. H. Connor & Co., described as "contractors of the defendant" railroad company "operating in Cumberland county." A final decree was rendered in the suit of Connor, May 28, 1896. Connor stood by and took no step to enforce this decree for a period of more than three years. In the meantime the creditors' suit in the state court was proceeding. General publication for four successive weeks was made in November and December, 1895, requiring all creditors to file their claims by April 1, 1896. January 12, 1897, an alias subpœna to answer issued to the sheriff of Cumberland county, requiring him to summon J. H. Connor & Co. to appe'r and plead to the February rules. This was returned January 15, 1897, "Search made, and the defendant not to be found in my county." On the day of this return an order was made on the rule docket by the clerk and master in these words:

"J. H. Walker et al. vs. Tennessee Central Railroad.

"In the Chancery Court at Crossville, Tennessee.

"In this cause it appearing by the sheriff's return that J. H. Connor & Co., one of the defendants, is not to be found in the county, and that search has been duly made by such sheriff, they are therefore hereby required to appear on or before the first Monday of March next before the clerk and master of said court at his office in Crossville, Tennessee, and make defense to the bill filed against them in said court by J. C. Walker et al., or otherwise the bill will be taken for confessed. It is further ordered that this notice be published for four consecutive weeks in the Crossville Chronicle.

"This January 15, 1897.          H. G. Dunbar, C. & M."

Publication was duly made as required by this order, and in the mode and manner required by the statute of the state. It is further shown by the clear weight of evidence that the firm of J. H. Connor & Co. consisted of J. H. Connor and B. L. Jett. Whether Connor and Jett were partners at the date of the construction contract between the railroad company and J. H. Connor is not very clear. But it does appear that very shortly after that contract was signed Jett became jointly interested with Connor as a partner, and that the work was thereafter carried on by them as partners under the name of J. H. Connor & Co. The written contract stood in the name of J. H. Connor, and the suit in the circuit court was conducted in Connor's name alone, and the decree is in the name of J. H. Connor, but the decree is for and upon a partnership claim. The railroad company, in its answer, stated that B. L. Jett was associated with J. H. Connor, and should be a party. But no plea in abatement or bar was filed, and the issue seems to have been abandoned. April 17, 1897, an amended bill was filed by Walker and others, making more specific the objects and purposes of the suit, and specifically praying that all liens and priorities be ascertained, and the railroad sold free from liens or incumbrances, and the proceeds of sale applied to the payment of claims in their proper order and rank. In this amended bill J. H. Connor and B. L. Jett were named as defendants, composing the firm of J. H. Connor & Co. Jett was served with process. It does not appear that any further process issued for J. H. Connor, but a decree pro confesso was taken against him and Jett in these words: "In this cause it appearing to the court that publication has been made as provided by statute, requiring J. H. Connor to appear and make defense to the original bill filed in the cause of J. C. Walker et al. against the Tennessee Central Railroad et al., and has failed to plead, answer, or demur thereto within the time required by law, it is accordingly ordered and decreed that said original bill be taken for confessed as to said J. H. Connor, and set for hearing ex parte. It further appearing to the court that B. L. Jett has been duly served with process to answer un-

der the amended bill in this cause, and has failed to plead, answer, or demur thereto, it is accordingly ordered and decreed that said amended bill be taken for confessed as to said B. L. Jett, and set for hearing ex parte." The answer of the railroad company to this amended bill included a schedule of the indebtedness of the company to J. H. Connor, and disclosed for the first time the liability of the company to J. H. Connor & Co., by stating that they had recovered a decree against the company in the circuit court of the United States for $21,421.78 for construction work, and that said court had declared said sum "to be lien upon ten miles of the railroad of the said defendant, * * * extending from Monterey to Johnson's stand." Under a reference to a special master, a report was filed as to the indebtedness of said company of every class. Among other lien debts, that to J. H. Connor & Co. was reported, though same does not appear to have ever been filed. A final decree was rendered May 10, 1897, which found the railroad company insolvent, and ordered the sale of its entire property free from all liens and mortgages. The decree settled the order of liens, and directed that, after paying costs and receiver's debts, the proceeds should be applied equally in payment of claims which were liens under the Tennessee statute. Among the claims thus preferred was included the decree in favor of J. H. Connor & Co. in the circuit court of the United States, which was referred to in these words: "The judgment obtained by J. H. Connor & Co. in the circuit court of the United States for the Middle district of Tennessee, for twenty-one thousand and forty-two dollars and seventy-eight cents, with interest from May 28, 1896, shall be entitled to the benefit of the foregoing provisions of this decree, and share ratably with the other judgments and decrees of the same character, and the special commissioner shall make distribution to said J. H. Connor & Co., or their assigns, upon said judgment, as fully as if they had intervened herein for the payment thereof." Next after these labor and material claims the mortgage bonds were preferred, for this embryo railroad had not only the dignity of receiver's certificates, but the added honor of a first-class mortgage. At the sale thus ordered the petitioner, the Tennessee Central Railway Company, became the purchaser of the entire property and franchises of the Tennessee Central Railroad Company. It has paid the entire amount of its bid of $125,000, and has received a fee-simple conveyance. Since said sale it has proceeded with the construction of said road, and for this purpose has made a mortgage to secure a large issue of bonds to be used in finishing and equipping its railroad. The proceeds of sale were nearly exhausted in paying costs and receiver's debts. The construction liens aggregated more than $100,000, and the pro rata applicable to the Connor claim was only a few hundred dollars.

Upon this state of facts the court below rendered a decree in these words: "That in the proceedings in the chancery court of Cumberland county, Tennessee, that court acquired jurisdiction over the entire properties of the defendant, Tennessee Central Railroad, including that portion or section thereof upon which the original bill in this cause was filed to enforce the contractor's lien, and that the said complainant in the original bill in this cause, after the jurisdiction of said Cumberland chancery court attached, and Connor was brought into that cause by publication, was required by law to present his claim for a final disposition to the chancery court of Cumberland county, Tennessee, and had not the right to enforce the decree by the process of this court, regardless of that suit. It is therefore ordered, adjudged, and decreed by the court that the order of sale heretofore issued by the clerk of this court in the original cause above stated be vacated and annulled, and the said J. H. Connor and his agents, solicitors, attorneys, and counsel, and every person claiming by or under or through said Connor, and each of them, are hereby restrained and perpetually enjoined from suing out of this court any process for the purpose of enforcing the lien of said decree against the section or portion of said railroad therein described, or any part thereof, and the costs of this proceeding to be taxed by the clerk are hereby adjudged and decreed against the said complainant, J. H. Connor, for which let execution issue as in actions at law; but the decree of this court is not otherwise affected than to prevent enforcement of the lien." From this decree Connor has appealed.

Jordan Stokes, for appellant.

Robert L. Morris and Geo. W. Easley, for appellee.

Before LURTON, DAY, and SEVERENS, Circuit Judges.

LURTON, Circuit Judge, having made the foregoing statement of the case, delivered the opinion of the court.

1. This court is not sitting as a court of error to review either the original decree of the circuit court in favor of J. H. Connor against the Tennessee Central Railroad Company, nor the decree of the state chancery court in the creditors' suit of J. C. Walker and others against the Tennessee Central Railroad Company, under which the present appellee, the Tennessee Central Railway Company, obtained its title. Those decrees are final. They are here only collaterally brought into question, and all the principles which relate to a collateral attack have application when we come to consider their force and effect. If they are not void, they must be given full effect and force, regardless of errors or irregularities which might have been remedied by a seasonable proceeding in error. The Tennessee Central Railroad Company was a corporation created by the state of Tennessee, and its entire projected line and all of its property was within the state of Tennessee. As an insolvent company, it was entirely competent that it should be wound up under a creditors' bill in a Tennessee court of equity as an insolvent corporation. Shannon's Code, §§ 5187, 6103, 6104; Marr v. Bank, 4 Cold. 471; Gleaves v. Turnpike Co., 4 Baxt. 83; Smith v. Insurance Co., 6 Lea, 564; Baxter v. Turnpike Co., 10 Lea, 488, 491; Tradesman Pub. Co. v. Knoxville Car-Wheel Co., 95 Tenn. 634, 32 S. W. 1097, 31 L. R. A. 593, 49 Am. St. Rep. 943. The bill of J. C. Walker and others was filed and conducted according to the usual course of a general creditors' bill. The only nonresident creditor claiming to have any interest in the property of the company under the control of the court was the appellant, J. H. Connor, who, as a member of the firm of J. H. Connor & Co., composed of J. H. Connor and B. L. Jett, had at the time a bill pending in the circuit court of the United States for the Middle district of Tennessee, in which he was asserting a contractor's lien against the railroad under the Tennessee statute giving a lien upon any railroad in behalf of contractors engaged in construction work.

Aside from any questions arising out of a possible conflict of jurisdiction by reason of the prior pendency of Connor's bill for the enforcement of his contractor's statutory lien in the circuit court, it was entirely competent for the Tennessee chancery court to bring J. H. Connor & Co. or J. H. Connor before the court, as persons claiming a lien upon an interest in the railroad property in the possession of the court, by publication as a nonresident, or as a resident who evaded service of process. Shannon's Code, § 6162. The power of the state to provide by statute for bringing into court nonresidents having interests in real property situated within the state, for the purpose of enforcing a lien, or clearing a title, or subjecting the property to the satisfaction of debts, can no longer be doubted. The whole subject has been thoroughly considered, and the limits

of the jurisdiction defined, in Pennoyer v. Neff, 95 U. S. 714, 723, 24 L. Ed. 565; Cooper v. Reynolds, 10 Wall. 308, 19 L. Ed. 931; Arndt v. Griggs, 134 U. S. 316, 10 Sup. Ct. 557, 33 L. Ed. 918; and Roller v. Holly, 176 U. S. 398, 20 Sup. Ct. 410, 44 L. Ed. 520. In Arndt v. Griggs, Justice Brewer, in delivering the opinion of the court, said:

"The question is not what a court of equity, by virtue of its general powers, and in the absence of a statute, might do, but it is, what jurisdiction has a state over titles to real estate within its limits, and what jurisdiction may it give by statute to its own courts, to determine the validity and extent of the claims of nonresidents to such real estate? If a state has no power to bring a nonresident into its courts for any purpose by publication, it is impotent to perfect the titles of real estate within its limits held by its own citizens; and a cloud cast upon such title by a claim of a nonresident will remain for all time a cloud unless such nonresident shall voluntarily come into its courts for the purpose of having it adjudicated. But no such imperfections attend the sovereignty of the state. It has control over property within its limits; and the condition of ownership of real estate therein, whether the owner be stranger or citizen, is subject to its rules concerning the holding, the transfer, liability to obligations, private or public, and the modes of establishing titles thereto. It cannot bring the person of a nonresident within its limits,—its process goes not out beyond its borders,—but it may determine the extent of his title to real estate within its limits, and for the purpose of such determination may provide any reasonable method of imparting notice. * * * Mortgage liens, mechanics' liens, material men's liens, and other liens are foreclosed against nonresident defendants upon service by publication only. Lands of nonresident defendants are attached and sold to pay their debts; and, indeed, almost any kind of action may be instituted and maintained against nonresidents to the extent of any interest in property they may have in Kansas, and the jurisdiction to hear and determine in this kind of cases may be obtained wholly and entirely by publication."

The appellant has strenuously insisted that he was not made a party to the creditors' bill in the state court, and that he did not appear, and is therefore in no way concluded by the decree of that court setting the Tennessee Central Railroad free from all liens and incumbrances, and that the lien declared by the circuit court to exist in his favor against a portion of that railroad has not been cut off or foreclosed by the proceedings in the state court. The question of the conclusiveness of the decree of the state court in respect to Connor's lien involves a number of questions. Among them are these: (1) The effect of the pendency of Connor's suit in the circuit court upon the jurisdiction of the state court over the property of the railroad company against which Connor was in that bill asserting a lien at the date of the institution of the creditors' bill in the state court. (2) The sufficiency of the publication made for "J. H. Connor & Co." as constructive service upon J. H. Connor. (3) The sufficiency of the publication made upon a return of an alias subpœna, "Not to be found in my county," under Shannon's Code, § 6162, subsec. 3, authorizing publication upon a return of "leading process" of "not to be found." Each of these questions bristles with difficulties, which we find it unnecessary to solve; for, if they should all be solved according to the contention of the appellant, there would still remain an insurmountable objection to the enforcement of the decree of sale awarded him by the circuit court. If we assume that J. H. Connor was not a party to the creditors' suit of J.

C. Walker and others against the Tennessee Central Railroad Company, and that he is therefore unaffected by the decree which directed the property and franchises of the railroad company to be sold free from all liens and incumbrances, it would follow that the purchaser at the sale made in pursuance of the decree in that case has acquired the property and franchises of that company subject to the rights of J. H. Connor under the decree of the circuit court, whatever they may be. If we also assume that the circuit court had the constructive possession of the entire property and franchises of that corporation from the date of the filing of Connor's bill, and that it could not be properly deprived of that possession by a proceeding subsequently begun in the state court, it would at most follow that the possession by the receiver appointed under the order of the state court would be ineffectual to confer any rights upon a purchaser under the decree of that court, and equally ineffectual in its effect upon the jurisdiction of the circuit court over that property. The actual seizure of the property was wholly unimportant to the jurisdiction of the state court. An insolvent corporation may be proceeded against under a creditors' bill, and wound up, without appointing a receiver, and we may treat the fact that the state court appointed a receiver pending Connor's bill as a nullity. It is due, however, to the state court, to say that there was no intimation in the bill of Walker and others that there was any proceeding pending in the circuit court of any kind, and at no time was there ever made to that court any suggestion of a possible conflict of jurisdiction. The railroad consisted of a mere graded roadbed some 23 miles in length, so that there was at no time any such actual possession by the receiver as to oust the purely constructive possession of the circuit court. However extensive we may regard the constructive possession of the circuit court by reason of the relief prayed under Connor's bill, the hand of that court was withdrawn as a result of its final decree, which declared Connor's lien to extend only to a specific part of the property of said company, which the decree described as "that portion of the defendant railroad company commencing with the town of Monterey, in the county of Putnam, and continuing in a southeasterly direction for ten miles"; "said strip of land being one hundred feet wide, upon which there has been constructed a roadbed for said railroad fourteen feet wide at its crest; and that there is also within and upon said property various cuts, trestles, and bridges,—upon all of which said judgment constitutes a lien, the court being of opinion that complainant is entitled to have so much of said railroad sold for the satisfaction of the aforesaid judgment." The necessary effect of this decree was to discharge the franchises and property of said railroad company from the possession and control of the circuit court, except in so far as Connor's lien was declared to extend. It was not until after this decree had been pronounced, and nearly a year had elapsed, that the state court ordered a sale of the property of said railroad company. The decree then made ordered the sale of the franchises and entire property of the railroad company. Twenty-three miles of railroad had then been graded. The railroad being

ordered sold as an entirety included, of course, the 10 miles of road-bed upon which Connor's lien rested.

Having assumed that Connor was not a party to or concluded by this decree, we must also assume that neither the decree nor the sale was effectual to defeat any right, lien, or remedy he may have by virtue of the decree of the circuit court. After lying silent for more than three years after date of his order of sale, Connor obtained a revivor, and was about to have his decree of sale executed. In the meantime the purchaser under the decree in the creditors' suit has completed and put in operation about 40 miles of railroad. Acting upon the assumption of the validity of its title, it has made a first mortgage, and its bonds to a large amount have been negotiated. Under these circumstances it has intervened in the case of Connor against the Tennessee Central Railroad Company, and has set up the title so acquired under the chancery court sale as a bar to any proceeding to enforce the order of sale awarded to Connor for the enforcement of his lien. These assumptions put the Tennessee Central Railroad Company in the attitude of a purchaser which has acquired, subject only to the unforeclosed lien of Connor, every right, title, and interest of the Tennessee Central Railroad Company and of its mortgagees and lienors foreclosed in the creditors' suit. Columbus, S. & H. R. Co. Appeals (C. C. A.; decided May session) 109 Fed. 177. In this attitude, and under these circumstances, it has intervened in the case of Connor against the Tennessee Central Railroad for the purpose of asserting the right and title thus acquired pending Connor's suit, and to prevent the dismemberment of its railroad by a sale which it claims will but cast a cloud upon its own title. We entertain no doubt that, if the appellee is entitled to be relieved from the threatened sale by which the unity of its railroad would be broken, the mode in which it has appealed to the circuit court to prevent the use of its power to its needless injury is appropriate. Krippendorf v. Hyde, 110 U. S. 276, 283, 4 Sup. Ct. 27, 28 L. Ed. 145; Buck v. Colbath, 3 Wall. 343, 18 L. Ed. 257; Gumbel v. Pitkin, 124 U. S. 131, 8 Sup. Ct. 379, 31 L. Ed. 374. If the execution of the decree of sale awarded to Connor will not confer a valid title to a purchaser, and will only result in casting a cloud upon the title of the intervener, Connor should be restrained from such an abuse of the process of the court, and remitted to such other remedy as may be open to him for the collection of his claim and the enforcement of his lien. The statute under which Connor asserted a lien is one which gives a lien to every contractor, subcontractor, and material man who aids in the construction of a railroad. Shannon's Code, § 3570 et seq. That the statute, by prescribing a remedy at law and in the circuit court of the state, cannot defeat the jurisdiction of the federal circuit court, sitting as a court of equity, of its jurisdiction to enforce a statutory lien upon property, such as the lien of a mechanic or railroad contractor, is well settled. Furnace Co. v. Witherow, 149 U. S. 574, 13 Sup. Ct. 936, 37 L. Ed. 853. The lien given by this statute is given equally to all who contribute to such construction, and the lien of each extends to the whole rail-

road, and is not limited to the particular section, bridge, or other part of the work. The lien extends to the entire railroad. The language of the statute is, "there shall be a lien upon such railroad." Statutes giving liens to builders of houses or furnishers of materials are construed as giving the lien upon the entire house or distinct structure. Steger v. Refrigerating Co., 89 Tenn. 453, 14 S. W. 1087, 11 L. R. A. 580. Under like statutes in respect to railroad contractors the lien is held for even stronger reasons to extend to the entire railroad. Brooks v. Railway Co., 101 U. S. 443, 25 L. Ed. 1057; Knapp v. Railway Co., 74 Mo. 374; Railway v. Wilcox, 122 Ind. 84, 23 N. E. 506; 2 Jones, Liens, §§ 1619, 1620; Elliott, R. R. §§ 520, 1074. Connor's bill described the property as an unfinished railroad still in course of construction, and averred that the work was being carried on by other contractors. He properly prayed that he might be declared to have a lien upon the road finished and that in course of construction, and upon the franchises of the company. This the court denied by limiting his lien to "that portion of the defendant railroad company [sic] commencing with the town of Monterey, in the county of Putnam, and continuing in a southeasterly direction for ten miles"; "said strip of land being one hundred feet wide, upon which there has been constructed a roadbed for said railroad fourteen feet wide at its crest; and that there are also within and upon said property various cuts, trestles, and bridges, upon all of which said judgment constitutes a lien, the court being of opinion that complainant is entitled to have so much of said railroad sold for the satisfaction of the aforesaid judgment." The decree then proceeds by directing that the commissioner will, after advertising, etc., "sell said property to the highest bidder for cash free from the equity of redemption or repurchase." It is plain from this decree that the contractor's lien declared by the court extends only to a specific strip of property constituting the right of way and roadbed thereon, and that for the purpose of enforcing this lien the circuit court ordered a sale of this specific property. What would a purchaser acquire under this decree? The franchise to construct and operate a railroad for tolls was a franchise to construct the line as an entirety. The franchise is a unit. A part cannot remain with the company and a part pass to a purchaser of a section of its railroad. It is not a case of where the work was abandoned after a part of the line had been constructed. Connor's bill averred that the work of construction was being carried on by the company when he filed his bill, and the decree itself recognizes that the sale ordered is only of "a portion" of the railroad. Neither does the decree of sale direct or authorize the sale of the franchise of the company, and it is clear that a franchise will not pass as appurtenant to a part of a roadbed. Ward v. Turnpike Co., 24 Cal. 474. It follows that the commissioner could not convey or deliver to the purchaser at his sale anything more than the right and interest of the railroad company in that portion of its right of way and roadbed described in the decree. That title and right is a mere easement acquired for the purpose of maintaining and operating a railroad thereon.

But if it be assumed, for the purposes of this case, that the fee to the described strip of land was in the company, the situation of a purchaser not owning the franchises would be no better. The general rule is that the physical property of a private corporation is as subject to be sold at judicial sale for the enforcement of a lien, or for the satisfaction of a judgment or decree for debt, as the property of an individual. But an exception exists, upon principles of public policy, in respect to the property of a quasi public corporation which is essential to the enjoyment of its franchises for the discharge of those public duties for which it was created. Property acquired and held as essential to the operation of quasi public franchises cannot be seized and sold separate and apart from the franchises, without which the latter would be inoperative. Thus, in Tennessee, without regard to the character of the title, the toll houses and roadway of a turnpike company are not the subject of execution, levy, and sale. "The weight of authority is," said Justice Cooper, speaking for the supreme court of Tennessee, "that the exemption of the franchise from levy will protect all property essentially necessary to its exercise, for the obvious reason that the franchise was conferred for a public purpose, and that there ought not to be any disposition of the property except in a mode which secures a continuance of the use of the franchise for the benefit of the public. The rights of creditors are sufficiently secured by the right to attach or impound the tolls, and, if necessary, to sell the property and franchises together." Baxter v. Turnpike Co., 10 Lea, 488, 493. This doctrine has received very general sanction. Elliott, R. R. §§ 520, 1074; Mor. Priv. Corp. § 1125; Gue v. Canal Co., 24 How. 257, 16 L. Ed. 635; Railway Co. v. Doe, 114 U. S. 340, 5 Sup. Ct. 869, 29 L. Ed. 136; Ammant v. President, etc., 13 Serg. & R. 210, 15 Am. Dec. 593; Railroad Co. v. Boney, 117 Ind. 501, 20 N. E. 432, 3 L. R. A. 435; Wood v. Turnpike Co., 24 Cal. 474; Railroad Co. v. Lewton, 20 Ohio St. 401; Bridge Co. v. Means, 33 Neb. 857, 51 N. W. 240, 29 Am. St. Rep. 514; Gooch v. McGee, 83 N. C. 59, 35 Am. Rep. 558; Gardner v. Railroad Co., 102 Ala. 635, 645, 15 South. 271, 48 Am. St. Rep. 84. The case of Gue v. Canal Co., 24 How. 257, 16 L. Ed. 635, is closely in point. An execution had been levied upon "a homestead lot, sundry canal locks, a wharf, and sundry other lots," all of which property, the court in its opinion said, was admitted to belong "to the canal company in fee." The canal company enjoined the sale under the fieri facias, and on final hearing the injunction was made perpetual. It was admitted that the property so levied upon was essential to the proper and useful operation and working of the canal, and that without same the franchise would be valueless. Upon appeal the decree was affirmed, the court, speaking by Mr. Chief Justice Taney, saying:

"The property seized by the marshal is of itself of scarcely any value, apart from the franchise of taking toll, with which it is connected in the hands of the company, and, if sold under this fieri facias without the franchise, would bring scarcely anything, but would yet, as it is essential to the working of the canal, render the property of the company in the franchise, now so valuable and productive, utterly valueless. Now, it is very clear that the franchise or right to take toll on boats going through the canal would not

pass to the purchaser under this execution. The franchise, being an incorporeal hereditament, cannot, upon the settled principles of the common law, be seized under a fieri facias. If it can be done in any of the states, it must be under a statutory provision of the states; and there is no statute of Maryland changing the common law in this respect. Indeed, the marshal's return and the agreement of the parties shows it was not seized; and, consequently, if the sale had taken place, the result would have been to destroy utterly• the value of the property owned by the company, while the creditor himself would, most probably, realize scarcely anything from these useless canal locks, and lots adjoining them. The record and proceedings before us show that there were other creditors of the corporation to a large amount, some of whom loaned money to carry on the enterprise. And it would be against the principles of equity to allow a single creditor to destroy a fund to which other creditors had a right to look for payment, and equally against the principles of equity to permit him to destroy the value of the property of the stockholders by dissevering from the franchise property which was essential to its useful existence."

In Railroad Co. v. Doe, 114 U. S. 340, 5 Sup. Ct. 869, 29 L. Ed. 136, the facts were that a judgment creditor levied an execution on the right of way of a railroad company, and it was sold and conveyed to the execution creditor by the sheriff. The court held that a right of way could not be sold under execution or otherwise to a purchaser who did not own the franchise. It is true that the court found that the right of way was a mere easement, and that the franchise had not been and could not be levied upon, being a mere incorporeal hereditament. But the court, among other things, said:

"The sheriff's deed purported to convey, in words, 'the said tract of land or railroad bed, to wit, the right of way of the Opelika & Oxford Railroad, so far as the right of way has been obtained, from Lafayette to the edge of Lee county.' If the deed undertook to convey any land, or soil, or roadbed, it conveyed with it the right of way. The deed, in reciting the levy, states that it was made 'on the following tract or lot of land, as the property of the said railroad company, to wit, the right of way'; and, if they obtained a deed of anything, the right of way was included, or else they received nothing beyond, perhaps, a right to carry away from the land what the company had put upon it. * * * This court decided in Gue v. Canal Co., 24 How. 257, 16 L. Ed. 635, that a corporate franchise to take tolls on a canal could not be seized and sold under a fieri facias, unless authorized by a statute of the state which granted the act of incorporation; and that neither the lands nor the works essential to the enjoyment of the franchise could be separated from it and sold under such a writ, so as to destroy or impair the value of the franchise. This decision was put on the ground that the franchise or right to take toll on boats going through the canal would not pass to the purchaser under the execution on a judgment at law against the corporation, because it was an incorporeal hereditament, and upon the settled principles of the common law could not be seized on a fieri facias, and was made in a case where the corporation owned in fee the real estate, toll houses, canal locks, and wharf seized, all of which were necessary for the uses and working of the canal."

The principle running all through these cases is that the property of a public corporation, such as a railroad, cannot be sold separately and apart from its franchise if the property is so indissolubly linked to the franchise and to its public functions as that without it the franchise will be rendered inoperative. The remedy of a creditor who has exhausted property not necessary to the exercise of the franchises is to obtain a receiver, and sequester the tolls or income, or a decree subjecting the property and its

franchises to sale as an entirety. Mor. Priv. Corp. § 1126; Baxter v. Turnpike Co., 10 Lea, 488; Gleaves v. Turnpike Co., 4 Baxt. 83; Drawbridge Co. v. Shepherd, 21 How. 112, 16 L. Ed. 38; Gue v. Canal Co., 24 How. 268, 16 L. Ed. 635.

The decree directing a sale of a portion of the roadbed of the Tennessee Central Railroad Company separate and apart from the franchises of the company is ineffective. The purchaser will acquire no right or title. To execute the decree will but cast a cloud upon the title of the Tennessee Central Railway Company, and operate only as an abuse of the process of the circuit court. The decree perpetually enjoining the commissioner from proceeding is therefore affirmed, with costs.